PORTER *et al.*

*v.*

ROBINSON *et al.*

(*Supreme Court of Appeals of Virginia, Aug. 1, 1895.*)

[22 S. E. Rep. 843.]

### Bill in Equity—Multifariousness—Case at Bar.*

A bill by heirs alleged their heirship; partnership of their decedent in a firm; sale of all the assets of the firm to a corporation in consideration that the vendee paid all the debts of the firm; completion of the sale by themselves, as heirs, and the surviving partners; sale by the vendee of the same property to a second corporation, in which the purchase price was partly secured by bonds, for the payment of which a vendor's lien was reserved, and subsequently canceled by the president of the first corporation without authority; execution of a trust deed of all the property by the last vendee to secure a fraudulent issue of bonds; the assumption and nonpayment of the debts of the partnership by the first vendee; stock taken by plaintiffs in the second corporation on representation of the president of the first corporation, also a promoter of the second corporation, that the lands would be sold to the latter company for $300,000, whereas they were sold at $330,000. The bill asked for the appointment of a receiver, and settlement of the accounts of the partnership; cancellation of the stock taken in the second corporation; a decree against it and its promoters for the full value of the stock, and against the president of the first corporation for the $30,000 profits made by him by the sale of land; for the restoration of the vendor's lien, and cancellation of the trust deed: *held*, that the bill was multifarious.

Appeal from circuit court, Wythe county; Williams, Judge.

Bill by S. L. Porter and others, as heirs, against John W. Robinson and others, for the settlement of the accounts of a

---

*See foot-note to Dunn *v.* Dunn, 26 Gratt. 291 (Va. Rep. Anno.).

partnership of which their decedent was a member. From a decree sustaining a demurrer to the bill for multifariousness, complainants appeal. Affirmed.

*Blair & Blair* and *I. H. Larew*, for appellants.

*Walker & Caldwell*, for appellees.

HARRISON, J., delivered the opinion of the court.

The only error assigned in this case is to the action of the circuit court in sustaining a demurrer, and dismissing an amended bill filed by the appellents, upon the ground that it was multifarious. There are a large number of complainants, who represent themselves as heirs at law of one James S. Crockett, and charge that said Crockett was in his lifetime a member of the firm of Crockett & Co., which was engaged in mining, smelting, manufacturing, and selling iron, farming, grazing, merchandising, and other lines of business; and further represent that said firm owned a large amount of valuable real and personal property, and was largely in debt. They claim that, as heirs at law of said Crockett, they are interested in having the affairs of said firm settled up, and its debts paid.

It further appears from the bill that the members of this firm, in the lifetime of James S. Crockett, sold the entire assets of the firm to the Wythe & Speedwell Mining & Iron Manufacturing Company, a corporation duly chartered under the laws of Virginia; the consideration for this purchase being that the vendee should assume and pay off all the debts and liabilities of Crockett & Co., the vendor.

James S. Crockett died before this contract was completed by the conveyance of all the assets of Crockett & Co. to the purchasers; and on the 7th day of April, 1890, the appellants, as heirs at law of James S. Crockett, united in a deed with the surviving members of the firm of Crockett & Co., conveying

to said Speedwell Company the residue of the assets of said firm. In this deed the grantors recognize the former deed executed by their father, James S. Crockett, in his lifetime, and also the contract for the sale of the whole of said assets, executed by him with the other members of the firm of Crockett & Co. Subsequently, on the 30th day of April, 1890, the Wythe & Speedwell Mining & Iron Manufacturing Company sold this same property to the Pulaski Development Company, another duly-chartered corporation, for the sum of $330,000, part of which was paid in cash, and for the residue bonds were given; and a deed was made to the purchaser, with general warranty of title, conveying the property free from all incumbrance, and reserving a vendor's lien to secure the deferred payments.

It further appeals from the bill that the Pulaski Development Company did, by deed of trust dated October 1, 1891, convey all of said property to a trustee, to secure $400,000 of coupon bonds issued by it.

The defendants to this bill are the administrator of James S. Crockett; the executor and devisees of M. B. Tate, a deceased member of the firm of Crockett & Co.; the Wythe & Speedwell Mining & Iron Manufacturing Company; the Pulaski Development Company; John W. Robinson, and the other promoters of the last-named company; George L. Carter, a creditor thereof; the Pulaski Loan & Trust Company, trustee; and Croker Bros.,—the last named, a firm which had contracted to sell the Pulaski Company's output of pig iron.

The bill alleges that the accounts of Crockett & Co. are unsettled; that the assets of said firm were conveyed to the Speedwell Company, and by it conveyed to the Pulaski Company; that the Speedwell Company assumed the debts of Crockett & Co., and has not paid them; that complainants agreed to take stock in the Pulaski Development Company for their interest in the affairs of Crockett & Co.; that they were induced to do this by the representation of John W. Robinson,

president of the Speedwell Company, and a promoter of the Pulaski Company, that the lands would be sold to the latter company at $300,000, whereas they were sold at $330,000, whereby Robinson made $30,000; that the directors of the Pulaski Company have fraudulently, and against the rights of the stockholders in said company, issued to George L. Carter $400,000, in bonds, secured by a mortgage on all its real estate ; that John W. Robinson, as president of the Speedwell Company, had wrongfully marked "Satisfied" the vendor's lien reserved in its deed to the Pulaski Company; that the Pulaski Company had executed a mortgage on the output of its furnace to secure George L. Carter such sums as he might advance to run its business; that these and other ultra vires and fraudulent acts of the directors of the Pulaski Company had rendered its stock worthless.

The prayer of the bill is for a settlement of the accounts of Crockett & Co. ; for a receiver of Crockett & Co.'s assets; for a cancellation of complainants' stock in the Pulaski Company, and a decree against the company for full value of that stock, and so much more as they may be entitled to on settlement of Crockett & Co.'s affairs; and that John W. Robinson be required to account for the profit he made as a promoter of the Pulaski Company.   They further pray for a restoration of the vendor's lien in the deed from the Speedwell Company to the Pulaski Company; for a collection of the Pulaski Company's mortgages to secure its bonds; for a cancellation of its contract and mortgage to Croker Bros. ; and for a decree against George T. Mills, L. S. Calfee, and John W. Robinson, promoters of the Pulaski Company, for the par value of plaintiffs' stock, and against Robinson for the $30,000 promoter's profit he is alleged to have received, and for general relief.

This bill shows no assumption by the Pulaski Company of the debts of Crockett & Co., and discloses no connection between the Pulaski Company and Crockett & Co., except that the Pulaski Company had bought land at a fixed price that the

Speedwell Company had purchased from Crockett & Co. The bill discloses no relation between the plaintiffs and the Pulaski Company, except that of stockholders. It does not charge that George L. Carter, when he contracted for the mortgage bonds of the Pulaski Company, had any connection with any of the parties complained of, nor does it charge that Croker Bros., whose contract is sought to be canceled, had any connection whatever with any of the matters, or any of the parties to the suit. The bill calls for investigation into the affairs of Crockett & Co., the Speedwell Company, and the Pulaski Company, and into the dealings of the last-named company with its stockholders and creditors, and into its dues to each, and the dealings of the promoters of said company with the Speedwell Company, and with the plaintiffs.

It is apparent, upon reading the allegations and prayers of this bill, that several matters, in their nature separate and distinct, are so blended as to produce confusion, and most likely to do great injustice to parties in no way concerned in the object and purpose of the plaintiffs' suit. We cannot see that the defendants Croker Bros., the Pulaski Company, L. S. Calfee, G. D. Carter, or George T. Mills have any connection with the affairs of Crockett & Co., or any concern with the settlement of that company's matters. By "multifariousness in a bill" is meant improperly joining in one bill distinct and independent matters, and thereby confounding them ; as, for example, the uniting in one bill of several matters perfectly distinct and unconnected, against one defendant, or the demand of several matters, of a distinct and independent nature, against several defendants in the same bill. In the latter case the proceedings would be oppressive, because it would tend to load each defendant with an unnecessary burden of costs, by swelling the pleadings with the statement of the several claims of the other defendants, with which he has no connection. In the former case the defendant would be compellable to unite in his answer and defense different matters, wholly unconnected with each

other; and thus the proofs applicable to each would be apt to be confounded with each other, and great delays would be occasioned by waiting for the proofs respecting one of the matters, when the others might be fully ripe for hearing. Story, Eq. Pl. § 271; Dunn v. Dunn, 26 Grat. 291; Brown v. Improvement Co., recently decided by this court, and reported in 20 S. E. 968.

Without further comment, it is sufficient to say that the appellants have improperly joined in their bill several distinct and independent matters, that cannot properly be litigated in one suit; and therefore the action of the circuit court in sustaining the demurrer for the reason that the bill was multifarious was without error, and the decree complained of must be affirmed.